# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| GREGORY A. RICE | * | |
| Petitioner, | | |
| v. | * | CIVIL ACTION NO. RWT-09-1947 |
| STATE OF MARYLAND | * | |
| Respondent. | | |
| | *** | |

## MEMORANDUM OPINION

Now before the court is a Petition for habeas corpus relief filed by Gregory A. Rice (Paper No. 1); Respondents' Response (Paper No. 8); and Petitioner's Reply and Motions for Summary Judgment.[1] (Paper Nos. 9, 11, & 12). After review of these documents, the Court finds no need for an evidentiary hearing. See Rule 8(a), Rules Governing Section 2254 Cases in the United States District Courts. For the following reasons, the Petition will, by separate order, be denied and dismissed with prejudice and Petitioner's Motions for Summary Judgment shall be denied.

## Factual History

In finding that the trial court properly exercised jurisdiction over Petitioner and affirming criminal judgment, the Court of Special Appeals of Maryland adduced the following facts from trial:

> JoAnne Cowden testified that on January 6, 2006, she was working at the Virginia Avenue Branch of the Hagerstown Trust Company which is located in Washington County. At approximately 10:00 that morning, a man entered the bank, pointed a gun at her, and ordered her to get on the ground. Because the man was pointing the gun at her, she obeyed. The robber then directed her to let him into the back of the counter and to put all of her money and the money from her other drawers into his bag. Cowden reported that the total amount the robber took was $6,639.00. Because the robber had a ski mask covering his face, Cowden saw only his eyes.
>
> Other bank personnel had notified the police when the man came into the bank and after he had been in the bank a few minutes, Cowden heard sirens.

---

[1] Petitioner has recently filed a Motion to compel a decision in this matter. (Paper No. 15). In light of the entry of this judgment, the Motion shall be denied as moot.

Gregory Alton, an investigator with the Criminal Investigation Division of the Washington County Sheriff's Office, testified that the officers found Jason Wyant in a wooded area, behind the bank. They transported him to the Sheriff's Department and interviewed him. The trial court did not permit Alton to testify about what Wyant said.

Alton subsequently interviewed appellant. Appellant told Alton that he drove Wyant to the Mall and dropped him off near the theaters. He acknowledged that he had gone to the "AC & T" store and bought a drink. He asserted that he then went home to bed and did not know about the robbery until he learned of it later on television. Appellant said he never called Wyant to learn whether he had gotten home alright. Appellant also told Alton that he had last spoken to Wyant four days previously. When Alton confronted appellant with telephone records that showed that appellant had spoken to Wyant the night before the robbery, appellant admitted that he and Wyant planned the night before to rob the bank. He admitted that he dropped Wyant off near the bank and knew that Wyant was going to rob it. He also admitted that he had given Wyant the ski mask he used during the robbery, but not specifically for the purpose of the robbery.

Alton further testified that the surveillance video of the "AC & T" store less than an hour before the robbery showed Wyant and a second person in the store. Wyant purchased gloves which were found in the field near where Wyant was located, along with knit caps worn during the robbery.

Alton later learned that appellant's vehicle was being repossessed because he was behind on the payments, and he was three months behind on his rent, but that appellant paid it on January 6th. At trial, Alton identified appellant as the person who admitted he was involved in the robbery.

Tara Bender, another investigator with the Sheriff's department Criminal Investigation Division, testified that she sat in on an interview with Alton and appellant. She confirmed that appellant admitted he had dropped Wyant off at the Hagerstown Trust Bank on Virginia Avenue to commit a robbery.

Appellant called Jason Wyant to the stand as a defense witness. Wyant admitted that on January 6th he was caught after robbing the Hagerstown Trust Bank. He insisted, however, that he acted alone. He admitted that he had inculpated appellant, but said that he did so because Alton told him he should be given a "stiff penalty" if he did not. Asked whether he had made a statement about a half-hour previously while in the bullpen at the courthouse, that he had lied, and that he [had] been forced, threatened, and coerced to involve appellant, he responded, "I don't know much about lie," but said that he had been threatened and coerced. He testified that

2

appellant had dropped him off at the Valley Mall and that appellant had no knowledge that he intended to commit this crime.

On cross-examination, Wyant continued to deny that appellant was involved with the robbery. He admitted that he did not want to testify or to implicate anyone in the robbery.

In response to the trial court's inquiry, Wyant responded that he had spoken to Alton one time and he gave Alton a statement after being advised of his rights. He explained that the detectives told him that he would probably be locked up for a long time. The State's Attorney offered him a lighter sentence through his lawyer on the day he was sentenced. He admitted, however, that prior to that morning, he had never spoken to a State's Attorney, and that all offers came through his attorney.

Gregory Alton, testifying in rebuttal, denied that he had threatened or coerced Wyant. He said he interviewed Wyant on January 9, 2006, after speaking with Wyant's mother, who said she thought Wyant was ready to give the full statement of what had happened. Alton said that after he advised Wyant of his Miranda rights, Wyant said that appellant had been talking about robbing a bank since the summer. He said that appellant called him on January 5, 2006, and told him to "pack up the shit because we are going to do what we talked about." Wyant knew he was talking about the armed robbery because of prior conversations. Wyant reported when they saw that the first bank they intended to rob was under construction and that there were too many witnesses, appellant mentioned the bank on Virginia Avenue. Wyant further told Alton that he and appellant were supposed to meet at a prearranged spot after the robbery, but when he got there, appellant was not there. Wyant believed that appellant fled because of the sirens that started immediately after the robbery.

Alton denied discussing plea agreements with Wyant. Alton said that when he confronted Wyant with the inconsistencies of his first statement and the facts he had learned, Wyant said he did not tell the whole story because he was scared.

(Paper No. 8, Ex. 7 at pgs. 1-5).

## **Procedural History**

On January 12, 2006, Petitioner Gregory Rice was charged in the Circuit Court for Washington County with various counts of armed robbery, robbery, theft and conspiracy. (Paper No. 8, Ex. 1). On November 30, 2006, a bench trial occurred before Circuit Court Judge Frederick C. Wright III. Petitioner waived his right to counsel and preceded *pro se*. Of import to this case is

the fact that during the bench trial Petitioner stated that he was a "secured party," and not a defendant, and that the trial court lacked jurisdiction over him due to his sovereign immunity. (Paper No. 8, Ex. 4 at pgs. 2-3, 9-10, 15, 45-46, & 91).

At the close of the case, Petitioner was convicted of conspiracy to commit armed robbery. And sentenced to serve 12 years in the Maryland Division of Correction. (Id., Ex. 4 at 89 & 91). On December 5, 2006, Petitioner filed a *pro se* appeal with the Court of Special Appeals of Maryland, alleging that the Circuit Court did not have jurisdiction to convict him of an offense. (Id., Exs. 5 & 6). On February 17, 2009, the Court of Special Appeals entered an opinion, denying the claim and affirming Petitioner's convictions. (Id., Ex. 7). A petition for writ of certiorari to the Court of Appeals of Maryland was denied on June 12, 2009. (Id., Exs. 8 & 9).

During the pendency of his direct appeal, Petitioner sought post-conviction relief in the Circuit Court, maintaining that the Circuit Court did not have jurisdiction over him and that his sentence exceeded the legal maximum. (Id., Exs. 10-14). A hearing was held on October 25, 2007. (Id., Exs. 1 & 14). Post-conviction relief was denied four days later. (Id.). Leave to appeal the decision on collateral review was not taken. On April 8, 2008, however, Petitioner filed a motion to reopen post-conviction proceedings, arguing that the Circuit Court had failed to address and resolve all issues raised in his initial post-conviction petition. (Id., Exs. 1 & 15). The motion was denied on April 29, 2008, and no appeal was taken. (Id., Exs. 1 & 16). On July 23, 2008, Petitioner filed his second motion to reopen, again arguing that the Circuit Court had failed to resolve all issues he raised in his initial post-conviction petition and had denied him the opportunity to present evidence. (Id., Exs. 1 & 17). The motion was denied on July 30, 2008. (Id., Exs. 1 & 18). An appeal of this

decision was dismissed by the Court of Special Appeals on October 2, 2008, based on non-compliance with the rules of appellate procedure. (Id., Exs. 19 & 20).

The instant Petition raises the heretofore "flesh and blood" defense, which other defendants in criminal cases have raised in this Court.[2] Petitioner alleges that on January 12, 2006, he was "kidnapped" by the Washington County Sheriff's Office and forced to make an appearance in the Circuit Court on behalf of the "corporation" of Gregory A. Rice. (Paper No. 1, ¶ 5.) On November 30, 2006, Petitioner alleges, the Circuit Court of Washington County, Maryland imposed on Gregory A. Rice—a "corporation" and "flesh-n-blood" human being—an illegal twelve-year sentence, or, in his words, "a term of unauthorized slavery," for a fabricated crime of conspiracy to commit armed robbery. (Id. ¶ 6.)

Affording the pro se Petition a generous construction, Petitioner seemingly claims, as he did before the Court of Special Appeals, that the state trial courts lacked subject matter and personal jurisdiction over his criminal case; the conviction was acquired over an "artificial/commercial/person/constructive trust"; his natural rights and sovereign citizenship were infringed upon by means of "fraud and trickery"; and he is not a person who may be served with process and subject to the government's jurisdiction. (Paper No. 1.)

## Standard of Review

Pursuant to statute, a federal court may not grant a writ of habeas corpus unless the state's adjudication on the merits

---

[2] A growing number of prisoners adhere to a "flesh and blood" sovereign man philosophy. See United States v. Mitchell, 405 F.Supp.2d 602, 603-06 (D. Md. 2005). Such a defense has been repeatedly rejected and has been viewed by this circuit as a "self-defeating legal strategy." See United States v. Jenkins, 311 Fed. Appx. 655, 656 (4th Cir. 2009).

1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or

2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A decision is "contrary to" Supreme Court precedent if "the state court applies a rule that contradicts the governing law set forth in our cases." Williams v. Taylor, 529 U.S. 362, 405 (2000).[3] Section 2254(d) also requires federal courts to give great deference to a state court's factual findings. See Lenz v. Washington, 444 F. 3d 295, 299 (4th Cir. 2006). Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct absent clear and convincing evidence to the contrary. The applicant has the burden of rebutting the presumption of correctness. A decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding. See Miller-El v. Cockrell, 537 U.S. 322, 340 (2003). In sum, § 2254(d) imposes a highly deferential standard for evaluating state-court rulings and demands that the state-court decisions be given the benefit of the doubt. See Renico v.

---

[3] Although § 2254(d) is a "highly deferential standard for evaluating state-court rulings," *Lindh v. Murphy*, 521 U.S. 320, 333, n.7 (1997), "which demands that state court decisions be given the benefit of the doubt," *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (*per curiam*), a state court decision is "contrary to" clearly established federal law when "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor,* 529 at 412-413. A state court decision is based on an "unreasonable application" of clearly established federal law when "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id*. at 409-410; *see also Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003); *Booth-el v. Nuth*, 288 F.3d 571, 575 (4th Cir. 2002). A federal district court may not issue the writ simply because it concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly; rather, the state court application must be objectively unreasonable. *See Renico v. Lett*, 130 S.Ct.1855, 1862 (2010).

Lett, 130 S.Ct. 1855, 1862 (2010). With these standards in mind, the court will address the merits of Petitioner's claims.

## Analysis

Throughout his conviction and post-conviction proceedings, Petitioner has consistently challenged the state circuit court's jurisdiction to convict him of a criminal offense. The Maryland Court of Special Appeals took the time to address the issue at length and in a patient and reasoned decision rejected Petitioner's claims. (Paper No. 8, Ex. 7 at pgs. 5-11). The intermediate appellate court's analysis, which is the state court's most recent pronouncement on Petitioner's claims, need not be repeated in this opinion. Suffice it to say, the appellate court held that the circuit court had jurisdiction over Petitioner, and the findings and conclusions of law necessary to that holding survive scrutiny under 28 U.S.C. § 2254(d) & (e). In short, the appellate court explained that the charges which serve as the basis for Petitioner's conviction in state court apply to a prohibited act committed by a "person," or, as defined under state law, an "individual." Petitioner is a "person" or "individual," and his distinction between a "natural" versus "artificial" person is nonsensical and of no merit.[4] Thus, the state court plainly had jurisdiction over Petitioner for having committed the crime upon which he was charged and convicted.

## Conclusion

In light of the rulings of the Court, the instant Petition for habeas corpus relief and the motions for summary judgment will be denied by separate order. When a district court dismisses a habeas petition, a certificate of appealability may issue "only if the applicant has made a substantial

---

[4] Under the "flesh and blood" defense, distinctions are made, for example, between John Doe, a natural, flesh and blood, person created by God, and JOHN DOE, a U.S. corporate artificial person, U.S. citizen, created by the government. See United States v. Mitchell, 405 F.Supp.2d 602, 603 n. 4 (D. Md.

7

showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A prisoner satisfies this standard by demonstrating that reasonable jurists would find that his constitutional claims are debatable and that any dispositive procedural rulings by the district court are also debatable or wrong. *See* Miller-El v. Cockrell, 537 U.S. 322, 336 (2003); Slack v. McDaniel, 529 U.S. 473, 484 (2000); Rose v. Lee, 252 F.3d 676, 683 (4th Cir. 2001). Petitioner does not satisfy this standard, and the Court declines to issue a certificate of appealability.


Date: July 13, 2010.                              /s/                   
                                        ROGER W. TITUS
                                        UNITED STATES DISTRICT JUDGE

2005).